UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **TIFFANY HOLES,** | Case No. 5:07 CV 1894 |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION |
| | (Resolving ECF #21) |
| **HANGER PROSTHETICS &ORTHOTICS, INC.,** | |
| Defendant. | Magistrate Judge James S. Gallas |

Defendant Hanger Prosthetics & Orthotics, Inc., has moved for summary judgment on the first count of the complaint made against it by a former employee, Tiffany Holes, who alleges pregnancy discrimination under Ohio Rev. Code 4112.01(A) due to failure to promote and termination from her employment at Hanger Prosthetics.

Ohio's discrimination statute Ohio Rev. Code §4112.02(A) provides that it is an unlawful discriminatory practice "[f]or any employer to discharge without just cause any person, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment" "because of the sex * * * of any person."[1] This last phrase as defined under §4112.01(B) means "because of or on the basis of pregnancy, any illness arising out of and occurring during the course of pregnancy, childbirth, or related medical conditions." Ohio Rev. Code § 4112.01(B). Section 4112.01(B) further provides:

---

[1] Ohio's discrimination statutes (Ohio Rev. Code §§ 4112.01 and 4112.02 ) were amended effective March 24, 2008, but amendment did not alter the relevant provisions.

5:07CV1894                                                              2

> Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work * * *.

"According to Ohio Adm.Code 4112-5-05(G)(5), if an employer has a leave policy, a female employee "must be granted a reasonable leave on account of childbearing." If there is no leave policy, the employee must be provided a leave of absence "for a reasonable period of time." Ohio Adm. Code 4112-5-05(G)(6)." *McConaughy v. Boswell Oil Co.*, 126 Ohio App.3d 820, 829, 711 N.E.2d 719, 724 - 725 (Ohio App. 1 Dist.,1998).

Under Rule 56 of the Federal Rules of Civil Procedure granting a motion for summary judgment is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In determining whether there is a genuine issue of material fact all inferences drawn from the underlying facts contained in affidavits, pleadings, responses to discovery requests, and depositions must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). A court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255. The burden is upon the movant to demonstrate the

3

absence of a genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979), *cert. dismissed* 444 U.S. 986 (1979). However, the nonmoving party is obliged to produce some evidence other than mere pleadings themselves to demonstrate that there is a genuine issue for trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must produce significant probative evidence in support of the complaint to defeat the motion for summary judgment through affidavits or admissions on file. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993). In the final analysis, "the threshold inquiry . . . [is] whether there is a need for trial -- whether in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *Moore*, 8 F.3d at 340. Once the nonmoving party has responded, the court must view the facts in the light most favorable to the nonmoving party. *Darrah v. City of Oak Park*, 255 F.3d 301, 304 n.1 (6th Cir. 2001).

Ms Holes counters her former employer's motion with her affidavit averring that: on May 24, 2006 she informed her supervisors, Ms. Dornbusch and Ms. Orzell that she was again pregnant, and dismissed from her job nearly one month later; that when she was terminated from defendant's employment on June 22,2006, she was pregnant; that she was not written-up for performance deficiencies during the time she was not pregnant; and that another employee, Bill Kondik's employee was not terminated for Sarbanes-Oxley Act violations, as she had been. Ms. Holes also claims to have direct evidence of employment discrimination due to a prior incident when she was

4

denied a promotion by Ms. Dornbusch who gave the job of lead office administrator to Ms. Cook for the reason that Ms. Cook "was finished having kids and she knew that I was still attempting to get pregnant." (Affidavit ¶ 9). Her deposition testimony is more illuminating because Ms. Holes stated that after she informed her supervisor Ms. Orzell of her January 21, 2006 miscarriage, Ms Orzell, "said that I was starting to climb the ladder of success with Hanger and that a baby, a pregnancy, could very well hurt those chances; that I was up for promotion and that promotion could not be given to me if I was going to be pregnant and taking leave." (Holes Dep. Pg 5- 6). Ms. Holes stated she objected and said that was not fair, to which Ms. Orzell responded "life was not fair." (*Id.*). Prior to this conversation another supervisor, Ms. Dornbusch, had "guaranteed" Ms. Holes promotion to the position of lead office administrator in December 2005 (*Id.*, at 216-17). Later, when Ms. Cook received the promotion and Ms. Holes complained to Ms. Dornbusch, she responded, "[t]hat Desi Cook already had five children and was finished having children. They needed someone that would be there all the time" (*Id.*, at 219).

Ms. Holes may establish her pregnancy discrimination case by two different methods. Either by direct evidence of discrimination or alternatively by making a *prima facie* case under *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973. See *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 631 (6th Cir. 2008)(adjudicating claim under Ohio law); *McConaughy v. Boswell Oil Co..* 126 Ohio App.3d at 829-30, 711 N.E.2d at 724 - 725; and see Pregnancy Discrimination Act cases, *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d

5

544, 547 (6th Cir. 2004); *Reeves v. Swift Transportation Co., Inc.*, 446 F.3d 637, 639-40 (6th Cir. 2006).

"Direct evidence, if believed, requires the conclusion that the unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Scherin-Plough Healthcare Prod. Sales Corp*, 176 F.3d 921, 926 (6th Cir. 1999). "Direct evidence of discrimination is evidence that proves that discrimination has occurred without requiring further inferences. See *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d at 548 ; *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)." *Reeves v. Swift Transp. Co., Inc.*, 446 F.3d 637, 640 (6th Cir. 2006). Direct evidence of discrimination "must establish not only that the plaintiff's employer was predisposed to discriminate ..., but also that the employer acted on that predisposition." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir.2004) (quotation omitted). Once plaintiff produces direct evidence of discrimination, the burden shifts to the employer to show that it would have taken the same employment action in the absence of termination. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006).

The evidence to be direct must be based on an "accurate and stigmatizing" stereotype. *Rowan*, 360 F.3d at 548-49. Further, direct evidence cannot consist of stray or innocuous statements. See *Hull v. Cuyahoga Valley Bd. of Ed.*, 926 F.3d 505, 514 (6th Cir. 1991). And finally, "to prevail on the claim of direct evidence, the claimant must show that the employer acted on its discriminatory

6

animus, not just that it possessed one. See *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004); *Hein v. All America Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000).

Ms. Holes contends that the statements from supervisors constituted direct evidence of pregnancy discrimination, and the court agrees. Hanger Prosthetics challenges the credibility of these statements and quibbles over Ms. Cook's job title, maintaining that she was promoted to area office manager as opposed to lead office manager in March 2006. There are genuine issues of material fact which cannot be resolved without an adjudication of credibility regarding denial of promotion due to pregnancy discrimination.

Ms. Holes offers no evidence that she was pregnant when denied a promotion. Actual contemporaneous pregnancy, though, is not a requirement. "The Supreme Court has held that the PDA [Pregnancy Discrimination Act] prohibits an employer from discriminating against a woman "because of her capacity to become pregnant." *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Johnson Controls, Inc.*, 499 U.S. 187, 206, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991); see also *Walsh v. Nat'l Computer Sys.*, 332 F.3d 1150, 1160 (8th Cir.2003) ("[Plaintiff] asserts that she was discriminated against ... because she is a woman who had been pregnant, had taken a maternity leave, and might become pregnant again. 'Potential pregnancy ... is a medical condition that is sex-related because only women can become pregnant.' ") (quoting *Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674, 680 (8th Cir.1996))." *Kocak v. Community Health Partners of Ohio, Inc.* 400 F.3d 466, 469-470 (6th Cir. 2005).

7

Regarding termination of employment, Ms. Holes stated in her deposition that after she called in sick due to influenza, Ms. Orzell, took the unusual step of filling in for an office administrator, Ms. Holes' position at that time on June 21, 2006 (Holes Dep. pg. 326). Hanger Prosthetics explains that Ms. Holes' employment was terminated due to a long history or performance-related issues and was ultimately terminated for performance after an audit revealed evidence of theft and violations the Hanger's compliance requirements for the Sarbanes-Oxley Act and its standard operating procedures. While looking for a receipt book, Ms. Orzell noticed large sums of cash and checks that had not been deposited. (Orzell Tr. 32.) Ms. Holes does not dispute that she left money in her drawer. (Holes Dep.pg. 258-259.) Ms. Orzell reported the large sums of unsecured cash and checks to Ms. Dornbusch. (Orzell Dep pg. 32; Dornbusch pg. 26-27.) As a result of this report, Ms. Dornbusch and Mr. Cerimele decided to return the next day and perform an audit. (Dornbusch Dep. Pg. 28.) Mr. Cerimele and Ms. Dornbusch reviewed every cash payment and receipt in Ms. Holes' desk drawer and discovered that none had been entered into the patient's account and posted to the system as required. (Dornbusch Affidavit, ¶ 5-6; Cerimele Affidavit, ¶ 3-4.14) They also reviewed the invoice register and accounts receivable write-off reports from January 1, 2006 to June 22, 2006. In total, Ms. Dornbusch and Mr. Cerimele discovered over *$10,000 worth of cash and checks* in Plaintiff's desk drawer that had not been deposited in the bank or posted to Hanger's system. (Ex. M; Dornbusch Affidavit, ¶ 6, Cerimele Affidavit, ¶ 3.)Finally, they reviewed the collection module reports.(*Id.*) During the audit they discovered that $100 was missing. (*Id.*) They determined that Ms. Holes had received payment of $100 from a patient, posted it as paid to the system and then backed

8

the payment out of the system with the return code even though no product had ever been returned by the patient. (Ex. M; Dornbusch Tr.62-63; Cerimele Affidavit, ¶ 4.).

Ms. Holes stated in deposition that another supervisor, Mr. Kondik, told her that on June 22, 2006, "Hanger was going to change things around with the checks to make it look really bad for you so that they could use it as an excuse to fire you." (Holes Dep. pg. 328). She also stated that Mr. Kondik took money from patients on more that ten occasions and failed to notify her of the money collected for posting nor turn it in for up to four weeks. (*Id.*, pg 44-45). According to Ms. Holes, Mr. Kondick took money from accounts payable (about $50) and later paid it back after purchasing a stroller for his children. (*Id.* pg. 47-48).

Ms. Holes claims that she was disciplined more harshly than a similarly situated non-protected person, using Mr. Kondik as a comparator. In *Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992), the term "similarly situated" non-protected person was restrictively defined to "'comparables [that] are similarly situated in *all respects*. (Emphasis in original).'" *Id.*, 964 F.2d at 583. This definition as broadened in *Singfield v. Akron Metropolitan Housing Authority* is:

> As this Court first explained in *Mitchell*, '[i]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated *in all respects*.' 964 F.2d at 583 (emphasis in original). We further stated, in *Ercegovich v. Goodyear Tire and Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998), that '[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar 'in all of the relevant aspects.' 'In *Perry v. McGinnis*, 209 F.3d 597, 601 (6th

> Cir. 2000), we reasserted that 'in applying [this] standard courts should not demand exact correlation, but should instead seek relevant similarity.'

389 F.3d 555, 562 (6th Cir. 2004).

It is readily apparent that the degree of infraction between Ms. Holes undeposited funds exceeding $10,000 does not compare to Mr. Kondik's lack of diligence. The comparator must have been subject to the same standards and engaged in the same conduct. See *Mitchell*, 964 F.2d at 583; *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002). Assuming that the $100 theft was trumped-up, as Ms. Holes claims, this does not discount the non-discriminatory reason for termination of employment.

With regard to Ms. Holes' termination the employer has responded by offering a legitimate non-discriminatory reason for the adverse employment action. Ms. Holes must rebut the proffered reason by proving that it is mere pretext designed to mask discrimination. See *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003). Ultimately the employee must show by a preponderance of the evidence that the proffered reason had no basis in fact, did not actually motivate employment action, or was insufficient to motivate the adverse employment action. *Anthony v. BTR Automatic Ceiling Systems, Inc.*, 339 F.3d 506, 516 (6th Cir. 2003); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 2004). This burden has not been met, so Ms. Holes allegation of failure to promote survive her former employer's motion for summary judgment, but her allegation of discharge from employment due to pregnancy, does not.

10

## *CONCLUSION*

Defendant's motion for summary judgement is granted in part and denied in part. With respect to allegation of discriminatory discipline due to pregnancy discrimination under the first count of the complaint defendant's summary judgment motion is granted, but denied with respect to allegation of failure to promote due to pregnancy discrimination.



s/James S. Gallas

United States Magistrate Judge

July 14, 2008